STATE ex rel. MINNESOTA LOAN & TRUST COMPANY v. PROBATE COURT OF HENNEPIN COUNTY and Others.[1]

May 28, 1915.

Nos. 19,229—(26).

**Widow's renunciation of provisions in will.**

1. Under the provisions of G. S. 1913, §§ 7237, 7238, 7239, 7243, the sur-

[1] Reported in 152 N. W. 845.

---

Note.—As to what constitutes an election to take under or against a will, see note in 49 L.R.A. (N.S.) 1072

viving spouse who has consented to her husband's will, and codicils added thereto, cannot arbitrarily withdraw her consent and elect to take under the statute instead of under the will.

**Same — husband's disclosure of property.**

2. Where the husband procures his wife to consent in writing to his will and to codicils added thereto, there is cast upon him the affirmative duty of making a fair disclosure of his property so that she may have knowledge of the effect of the will upon her rights and intelligently determine whether she will consent; and, if such disclosure is not made, the surviving wife not being guilty of laches, and not being precluded from doing so by contract or estoppel, may after his death rescind her consent and elect to take under the statute.

**Election to take under the statute.**

3. Upon the record before us a case was presented permitting the wife to rescind her consent and renounce the will and elect to take under the statute.

Upon the relation of the Minnesota Loan & Trust Co. as executor and trustee under the will of Curtis H. Pettit, deceased, and as testamentary guardian of the estates of Deborah Louise Douglas, Elizabeth Pettit Douglas and Eleanor George Douglas, minors, this court granted its writ of *certiorari* to review a decree of the probate court for Hennepin county, Dahl, J., in the matter of the estate of relator's testator. Affirmed.

*Cobb, Wheelwright & Dille, J. M. Martin* and *C. E. Drake,* for relator.

*Carleton & Carleton,* and *Keith, Kingman, Cross & Wallace,* for respondent.

DIBELL, C.

*Certiorari* to the probate court of Hennepin county to review a decree adjudging that Deborah M. Pettit, the widow of Curtis H. Pettit, deceased, take a distributive share of the estate of the deceased under the provisions of the statutes, the same as if the decedent had died intestate, in lieu of the provisions made for her by the terms of his will and the codicils thereto.

The relator is the Minnesota Loan & Trust Co. as executor and trustee under the will of the deceased, and as testamentary guardian of certain minors, grandchildren of the deceased. It is not conceded that the trust company is a testamentary guardian, and it is unimportant in this controversy.

Curtis H. Pettit made his will on January 22, 1908. He made four codicils dated respectively October 29, 1908, August 31, 1909, September 9, 1909, and March 14, 1913. To the will and to each of the codicils Deborah M. Pettit, his wife, formally consented in writing. Pettit died on May 11, 1914. The will was probated on June 15, 1914. Before the probate of the will, Mrs. Pettit filed an instrument in the probate court purporting to withdraw and rescind the consents which she had made to the will and to the four codicils; and by appropriate action she renounced the will and elected to take under the statute. Conceding that she had the power, her actions accomplished the purpose intended.

The ultimate question is whether Mrs. Pettit could, after the death of her husband, rescind her consents to the will and the codicils, and elect to take under the statute instead of under the will.

We have had the benefit of the briefs and arguments of counsel put before us in such a way as to be of direct aid. Some authorities are cited from other states. We have found a few additional ones. They are of aid, but they come from states having dissimilar statutes and often different policies of administration. They have all been considered. The research of counsel has not produced a line of controlling authorities nor has our search been more fruitful. The question is a new one; and, without putting of record the evidence of the researches of counsel and the court, or following counsel in their contentions, we state with little argument or discussion the result we reach and what we think to be the equitable and working rule applicable.

1. The determination of the question stated involves a consideration of certain statutory provisions of the law of descents. For convenience we refer to them under the section headings of G. S. 1913, as follows:

7237. HOMESTEAD—"The homestead of such decedent shall

descend, free from any testamentary or other disposition thereof to which the surviving spouse, if there be one, shall not have consented in writing." * * * (R. L. 1905, § 3647); G. S. 1913, § 7237.

7238. LANDS OTHER THAN HOMESTEAD—"The surviving spouse shall also inherit an undivided one-third of all other lands of which decedent at any time during coverture was seized or possessed, to the disposition whereof, by will or otherwise, such survivor shall not have consented in writing, except such as have been transferred or sold by judicial partition proceeding or appropriated to the payment of decedent's debts by either execution or judicial sale, by general assignment for the benefit of creditors, or by insolvency or bankruptcy proceedings, and subject to all judgment liens." * * * (R. L. 1905, § 3648, as amended by Laws 1907, p. 42, c. 36, § 1); G. S. 1913, § 7238.

7239. ELECTION, ETC.—"If the will of a deceased parent makes provision for a surviving spouse in lieu of the rights of his estate secured by statute, unless such survivor, by an instrument in writing filed in the probate court in which such will is proved within six months after the probate thereof, shall renounce and refuse to accept the provisions of such will, such spouse shall be deemed to have elected to take thereunder." * * * (R. L. 1905, § 3649); G. S. 1913, § 7239.

7243, subd. 6. "The residue, if any, of the personal estate shall be distributed as follows: One-third thereof to the surviving spouse, if any, free from any testamentary disposition thereof to which such survivor shall not have consented in writing." * * * (R. L. 1905, § 3653), G. S. 1913, § 7243.

The omission in paragraph 6 of the last section of a reference to a disposition other than a testamentary one is likely, because when the provision came into the probate code there was no personal property belonging to either spouse which such spouse might not convey without the consent of the other.

Section 7239 gives a right of election, in the cases to which it is applicable, to take under the statute instead of under the will. Unless an election is made to take under the statute, the survivor takes under the will. Prior to the statute providing for the statutory

election, which is section 65 of the probate code of 1889 (Laws 1889, p. 107, c. 46), there was no statutory election. There was, however, an equitable right of election whether to accept the benefits of the will or take under the statute as there is now when the election statute is not applicable. See Tracy v. Tracy, 79 Minn. 267, 82 N. W. 635; Sorenson v. Carey, 96 Minn. 202, 104 N. W. 958; Washburn v. Van Steenwyk, 32 Minn. 336, 20 N. W. 324; Radl v. Radl, 72 Minn. 81, 75 N. W. 111. So, in referring to the election statute, Justice Philip E. Brown, in Boeing v. Owsley, 122 Minn. 190, [142 N. W. 129], said:

"It confers no substantive right, but merely provides for a statutory estoppel to set at rest, after the expiration of the prescribed period, all question as to whether the survivor has elected to take under the will and not under the statute, the failure to elect within such time being 'equivalent to an assent to the disposition of the property as fixed by the will.'"

If the surviving spouse consents to the making of the will, she must take what is given her by it, and may not elect to take under the statute. See Radl v. Radl, 72 Minn. 81, 75 N. W. 111; Jones v. Jones, 75 Minn. 53, 77 N. W. 551; Sorenson v. Carey, 96 Minn. 202, 104 N. W. 958; Erickson v. Robertson, 116 Minn. 90, 133 N. W. 164.

The result therefore is that Mrs. Pettit, because of her consent to the codicils and the will, must take under the will, unless she may avoid them by the application of some recognized legal principle; and she cannot arbitrarily rescind and renounce the will.

2. The difficult question is whether the wife, after the death of her husband, may rescind her consent to his will and its codicils and elect to take under the statute, her right to act as she chooses not being affected by an estoppel in favor of others, nor by a contractual obligation.

We take the correct holding to be that when a trust and fiduciary relation exists, as there does between husband and wife, the wife having a legal right in case of the death of her husband to some share in his property and reposing trust and confidence in him, there is cast upon the husband, in taking a consent to the making

of his will, or to a codicil to it, the affirmative duty of making to his wife a fair disclosure of his property and her rights, so that her consent will be an actual one, based upon an intelligent knowledge of his property and the effect of her consent, as distinguished from one merely formal. As great a duty of disclosure as that stated is required in ante-nuptial settlements. If this is not done, and the consent is not fairly and reasonably obtained by putting the wife in possession of the facts which she ought to know in order to determine her course intelligently, she may, after his death, if she proceeds without laches, renounce her consent and elect to take under the statute. If the provision of the statute relative to descents, giving effect to a consent by one spouse to the will of another, without a reserved right of election after the death of the other, does not work justly under such a rule it should not work at all. We have in mind no other trust or fiduciary relation at all resembling that here involved where the law requires one party to submit to a surrender, at the instance of the other, of valuable rights, though the surrender is made in compliance with all legal forms, if made in ignorance of the existence of such rights or without fair opportunity for investigation, the other party having full knowledge. The rule stated we adopt.

3. The remaining question is whether the rule we adopt is applicable to the situation presented. Of this there is no substantial doubt.

The probate court finds that Mrs. Pettit gave her consent without consideration and without knowledge of the condition and value of the estate; without knowledge of the property she would receive under the will and codicils; and without knowledge of the nature and extent of her own rights. It is found that the provisions made by the will and codicils are inadequate to enable her to live in her accustomed way.

The amount and condition of Mr. Pettit's property at the time of the making of the will are not satisfactorily shown by the record. Mrs. Pettit had no knowledge. It is clear that Mr. Pettit carried an indebtedness of a large amount; that he lost and gained through stock investments; that he had properties both productive and nonproductive, some being a continuous charge on his estate; that he

had mining properties under operation and productive of a large income; and that altogether his estate was a very considerable one. His will provided that his wife, in addition to certain gifts of property pertaining to the home, should have, during her life, one-half of his net income.

The first codicil did not affect Mrs. Pettit's income. The second provided for the disposition of copper stocks to constitute a trust fund for various charitable purposes. This would have affected Mrs. Pettit's income had it not been the copper stock proved to be substantially worthless. By the third codicil Mr. Pettit took the profits from certain mining property devoted to Mrs. Pettit's income under the will, the very cream of his productive property, and provided that such profits should not longer be a part of her income but should be reinvested as principal. The fourth codicil related to the powers of the trustees and did not affect Mrs. Pettit's income.

If there had been no omission to disclose, except at the time of taking the consent to the third codicil, it may be that a proper adjustment could be made by restoring the property to the estate; but there was a failure to disclose at the time of the will.

From what is said it is not to be understood that there was a thought on the part of Mr. Pettit of defrauding Mrs. Pettit by the making of the will or by the addition of the codicils. They were each 75 years of age when the will was made and they had lived together happily, she reposing entire confidence in him, for 51 years as husband and wife. It is rather to be inferred that Mr. Pettit did not intend the situation which has arisen; but he did take the consents from Mrs. Pettit, without a disclosure, and if they are given effect an inequitable result follows.

Judgment affirmed.