## IN RE ESTATE OF THEODORE J. PAGEL.[1]

February 4, 1938.

Nos. 31,431, 31,484.

*Herbert T. Park,* for appellant Irma F. Pagel and respondents Margaret R. Bashaw, Lena M. Meyer, Emma Smith Dressel, Amelia Pruhs Taplin, Elizabeth Olson, Ella L. Denis, Mable L. Scollard, Dorothy F. Schwalbach, and Edward Pagel.

*Stinchfield, Mackall, Crounse, McNally & Moore, Clyde W. Fiddes,* and *Harry B. Swan,* for appellants Albert Pagel, Erwin Pagel, Otto Pagel, Ella Isaacson, Martha Gratz, Mayme Moberg, and Josephine Johnson.

*Cobb, Hoke, Benson, Krause & Faegre, George D. McClintock, Everett A. Drake,* and *Strong, Covell & Strong, amici curiae.*

LORING, JUSTICE.

This case comes here on two appeals from a judgment of the district court which modified an interlocutory decree of distribution by the probate court of Hennepin county. On one appeal the appellants are testator's brothers and sisters who claim that certain property was specifically bequeathed to them. On the other, the

[1]Reported in 277 N. W. 417.

testator's widow is the appellant. The respondents principally concerned are sisters-in-law of the testator who were given pecuniary legacies by a codicil to the will. The executors and one brother who was excluded from the bequest to the other brothers and sisters are also respondents.

Theodore J. Pagel died July 1, 1935, leaving him surviving a widow but no children. He left a will dated March 12, 1926, to which five codicils had later been attached. By the terms of the orginal will the testator devised and bequeathed to his wife, Irma Frances Pagel, one-third of his estate, real, personal, and mixed. To his brother William he left one dollar. To his other brothers and sisters he devised and bequeathed the residue of his estate except the stock which he owned in the Pagel Rotary Pump Manufacturing Company, which stock he bequeathed to his executors and trustees—

"To be held by them in trust for my heirs and devisees for the following uses and purposes:

"To hold said stock together in one block so far as possible and to vote the same at any meeting of the stockholders of said company and to collect the income and dividends from said stock and to distribute the income and dividends from said stock to the beneficiaries named in this last will and testament to carry out the intent and purpose thereof, giving to each one of said beneficiaries the proportion or share to which they [sic] may be entitled, as long as the patents now held by said company, or any renewal or re-issue thereof, shall be in full force and effect, and after the date of the expiration of said patents or any renewals, to liquidate the affairs of the Pagel Rotary Pump Manufacturing Company in such manner as may be required by law, and to divide the proceeds coming to my estate, on account of the stock hereinbefore referred to, among my heirs as hereinbefore directed."

He directed his executors to convert all of his estate except the Pump Manufacturing Company's stock into cash "as soon after my decease as conveniently may be done and that the one-third interest in my estate hereinbefore bequeathed to my wife, shall be paid to her so far as possible, out of the moneys realized from my

life insurance and other properties." By the first codicil, he substituted his wife for one of the executors named in the original will. By the second, he changed the proportions of his residuary estate which should go to certain of his brothers and sisters. By the third, he again changed that proportion. By the fourth, he again made a change in the personnel of his executors and, on account of the depression, "devised" to each of eight sisters-in-law the sum of $1,500. By the fifth codicil, he made his wife, his brother Albert, and one Oscar Schwalbach his executors and revoked any bequest or devise theretofore made to his brother Edward, but reinstated the devise and bequest made to him in the original will or any codicil on condition that Edward pay certain promissory notes which the testator had assigned to his wife. In other respects he confirmed his will.

The will was admitted to probate. The widow renounced the will and elected to take under the statute.

At his death the testator owned real property appraised at $6,800 and 1,390 shares of the capital stock of the Pagel Rotary Pump Manufacturing Company, which later were liquidated by the executors for approximately $47,400. The expenses of administration and the payment of other obligations of the estate amounted to over $14,000 and exceeded the value of all property in the estate other than the shares of stock in the Pump Manufacturing Company. Debts and expenses have been paid out of the proceeds of the corporate stock.

The questions presented by these appeals are whether, under the provisions of the new probate code, which is L. 1935, c. 72, the widow who renounces the will of a testate decedent and elects to take under the statute is entitled to one-half of the deceased's estate where there are no children, as in this case, or to only one-third; and also whether or not the provisions of the will relating to the corporate shares in the Pump Manufacturing Company constituted a specific bequest to the brothers and sisters of the deceased, paramount in the distribution of the estate to the cash bequeathed to the sisters-in-law, claimed by the brothers and sisters to be general legacies which must abate on account of insufficiency of funds. It is also

asserted that the assets other than the proceeds of the corporate shares should first be applied to the debts and expenses and then to the widow's statutory share, after which the remaining proceeds of the corporate stock should be applied in furtherance of the purposes expressed in what is asserted to be the specific bequest of the shares.

■ At the outset of the consideration of this case we are confronted with the construction of the new probate code as applied to cases where the testator is survived by a spouse but no children. L. 1935, c. 72, § 29, which appears as 3 Mason Minn. St. 1936 Supp. § 8992-29, provides for the descent of property. Subsection numbered 1 relates to personal property and provides that one-third thereof shall descend to the surviving spouse free from any testamentary disposition. Subsection numbered 2 makes a similar provision in regard to real property. Subsection numbered 3 provides: "If a spouse and only one child or the issue of a deceased child survive, the share of the spouse under the provisions of subsections 1 and 2 hereof shall be one-half instead of one-third."

It is the contention of all parties to these appeals other than the widow and her sisters that where a person dies testate and no child or issue of a deceased child survives with the surviving spouse, the rights of the spouse are controlled by subsections 1 and 2 unmodified by subsection 3, there being no specific provision in such case. They even go so far as to contend that subsection 3 has no application to testate cases and that a surviving spouse who renounces the will may not take to exceed one-third though one child survives with such spouse. That contention, however, is contrary to the plain wording of the statute, which reads into subsections 1 and 2 the word "one-half" instead of "one-third" where only one child or the issue of a deceased child survives with the surviving spouse. In such cases, subsection 1 should be read "to the surviving spouse one-half thereof free from any testamentary disposition." Subsection 2 should be similarly read. So read it seems plain to us that the legislature sought to make the provisions of subsection 3 apply to cases of testacy as well as cases of intestacy. If it had been the legislative intent to make the provisions of subsection 3 apply only in cases of intestacy it would have placed such provisions in a

subdivision of subsection 4. It also seems plain to us that the legislature considered it more equitable that where there was but one child the widow should have one-half of the estate rather than only one-third as where there were more children. In other words, as the number of surviving children decreases below two, the share of the surviving spouse should increase. What, then, was the purpose of the legislature in case no child or issue of a deceased child should survive with the spouse? It seems absurd that the legislature should intend to favor the survivor with one-half the estate when there is but one child and decrease such share in favor of more distant devisees where there is no child. The announced reason of the drafters of the code for giving the survivor half when but one child survived was that the former statute providing for but a third in such cases was "inequitable." Certainly it is far more inequitable and absurd to legislate in favor of the beneficiaries of a will and against the surviving spouse where no children survive. We cannot impute to the legislature an unexpressed intent to penalize the unfortunately childless survivor. Subsection 3 should be read: "If a spouse and not more than one child * * * survive," etc. We hold that the widow is entitled to one-half of the estate where she renounces the will when no child survives.

■ We now come to the more difficult task of construing those provisions of the will in relation to the stock of the Pump Manufacturing Company. The prime purpose of construction of a will is to arrive at the intent of the testator. Specific bequests are not favored by the law. We must take the will by its four corners and determine whether the testator attempted to create a trust or merely intended to direct his executors to hold the shares of stock during the life of the patents owned by the company. In that part of his will in which he appointed executors, he referred to them as "executors and trustees," and so referred to them in his previous directions to convert all of his estate except the stock into cash and as soon after his decease as conveniently might be. So there is no significance in his use of the word "trustees." He first directed that the shares should be held in trust for "my heirs and devisees" and then that the income from the stock should be distributed to

the "beneficiaries named" in his will "to carry out the intent and purpose thereof, giving to each one of said beneficiaries the proportion or share, to which they [sic] may be entitled." On the theory of the brothers and sisters this would be an impossible task because the sisters-in-law are beneficiaries and their shares are in fixed sums, not in proportions. The testator then directed a division of the proceeds "coming to my estate * * * among my heirs as hereinbefore directed." This confusion in terms indicates that the testator was not using any of them in their technically accurate sense. Technically the brothers and sisters were not "heirs" except as they, like the sisters-in-law, were made beneficiaries by the will. Had there been no will they would have taken nothing. The widow would have taken all. The testator's use of the phrase "coming to my estate" indicates either that he did not intend to separate the shares from his estate by special bequest or that if a trust was attempted it was for the benefit of his estate. It is true that he starts the provision in regard to the stock by devising and bequeathing it to his executors and trustees to be held by them in trust, but it appears to us that it was his intention to provide merely that the stock was to be held until the expiration of the patents, the proceeds then to be available as general assets of the estate. If he attempted to create a trust, it was one in favor of his estate as such, not in favor of any persons or class of persons upon its liquidation. The dividends and proceeds of the stock were to be distributed as general assets according to the other provisions of the will. Taking the will as a whole, this intent seems clear to us.

Therefore the sisters-in-law take their pecuniary bequests as provided in the codicil, and the brothers and sisters are residuary legatees only and not beneficiaries of a special bequest.

The case is remanded with directions to modify the decree in accordance with the views herein expressed.

HOLT, JUSTICE (concurring).

I concur, except as to that part of the opinion which holds that a spouse and one child means the same as a spouse with no child, under the provisions of 3 Mason Minn. St. 1936 Supp. § 8992-29.

If otherwise there be absurdity in the statute, I think the legislature should remedy the same and not the court.

MR. JUSTICE STONE took no part in the consideration or decision of this case.